## General Refractories Co. v.
## Fireman's Fund Insurance Co.

*Andrew Butz* and *John N. Ellison,* for plaintiff.

*Richard L. McMonigle Jr., David F. Abernethy, David P. Bruton, Wilson M. Brown III* and *Susan Kennedy*, for defendant.

BERNSTEIN, *J.,* April 20, 2000—For five years, case management in Philadelphia County has been conducted pursuant to General Court Regulation 95-01. This coordinated progression of cases from filing to trial has eliminated a case backlog which had achieved epic proportions. Cases are now brought to trial in Philadelphia County within American Bar Association recommended standards for trial courts.

The clear and enforced deadlines for discovery and motion practice initially caused difficulty for many practicing members of the bar. Due to excellence in skill and cooperation in spirit, the trial bar adjusted. Philadelphia lawyers have devoted countless hours of pro bono work resolving cases as trial judges pro temp and settlement masters. The local bar has adjusted to a new and very different case management system, managing unanticipated problems with grace and cooperation, while treating opposing counsel with honesty, candor and civility. In stark contrast to the vast number of attorneys in our court, a few lawyers have seized upon enforced deadlines as an opportunity to take unfair advantage of the reasonableness and civility of opposing. Under the guise of negotiation and compromise those few who employ "slash and burn" litigation, delay legitimate discovery requests, pretend to be cooperative, dissuade recourse to discovery court, blame their client for failings and make repeated promises, all the while keeping one eye vigilantly on the clock, awaiting the moment when they can pounce upon unsuspecting prey to claim unjustified pro-

tection by the passage of a deadline. Unfortunately, in the matter before the court, Fireman's Fund Insurance Company through the action of their pro hac vice counsel has adopted this dysfunctional approach.[1]

This is a claim for breach of contract, breach of fiduciary duty and bad faith pursuant to 42 Pa.C.S. §8371, brought by an insured, General Refractories, against its insurance carrier, Fireman's Fund, seeking declaratory relief and monetary damages. Plaintiffs are corporations which over many years manufactured heat resistant products used in the construction of high temperature facilities. Plaintiff is a defendant in thousands of cases seeking damages for bodily injuries resulting from exposure to asbestos contained in plaintiff's products. Defendant, an insurance company, provided plaintiff with excess liability coverage applicable to these asbestos insurance claims.

Prior to suit, plaintiff made demand upon defendant for coverage pursuant to their policy of insurance, requesting indemnification and costs of defense. After providing defendant with all reasonably requested documentation to document their claim and after attempting to resolve these coverage questions amicably, plaintiff filed

---

1. Counsel admitted to practice law in another jurisdiction have no right to practice in Pennsylvania. Upon representing that the bar of another state has found an individual of good character and adequate learning to practice law, counsel are routinely admitted pro hac vice without any investigation. Usually pro hac vice counsel comport themselves honorably and professionally. Unfortunately, the pro hac vice counsel can engage in practices not generally accepted by the legal culture of the admitting jurisdiction, secure in the knowledge that "slash and burn" tactics will not draw the loss of credibility and reputation which usually accompany such an approach. Pro hac vice counsel can engage in reprehensible conduct with the expectation of impunity because they foresee no need to ever deal with either opposing counsel or the local court on any second occasion in the future.

suit. This suit seeks a judgment directing defendant to fulfill its obligations under the liability policy, requests compensatory damages for breach of contract, punitive damages, costs, and attorney's fees pursuant to the bad faith statute.

This motion was brought by plaintiff seeking the ultimate sanction of judgment against defendant because Mr. West, the central representative of defendant before this lawsuit was filed, lied under oath at his deposition when he said documents did not exist. Plaintiff claims that pro hac vice litigation counsel for defendant knew that the testimony was perjurious when offered, did not correct the testimony, and actively concealed the documents. At his deposition, Mr. West testified that no notes of conversations with plaintiffs existed and nothing other than billing information was on his computer. In fact, computer notes of conversations and numerous computer generated e-mail messages existed. These records, which were then, and are now, on defendant's computers, had been independently requested of defendant in discovery prior to the deposition and were also covered by the subpoena issued to Mr. West directing him to bring records to the deposition. These records were not produced.

Despite the denial at Mr. West's deposition, defendant's same litigation counsel used these hidden documents during a subsequent deposition of plaintiff's principle, Barry Katz. Following Mr. Katz' deposition, Mr. West's deposition resumed. Mr. West then acknowledged the existence of notes. Defendant's counsel, Mr. Butz, still alleged he did not know of their existence, and continued to refuse to produce them, claiming a need to review.

Initially presented along with a hundred other motions on other cases in discovery court, this court heard oral

argument over a four-day period, reviewed voluminous filings, memoranda, appendices and exhibits and has determined that the defendant's conduct in concealing the West computer records and numerous other highly significant documents was intentional, inexcusable, and warrants severe sanctions.[2] Indeed, defendant's conduct throughout discovery and evidenced by disingenuous behavior during this very motion, calls into question the accuracy and completeness of all discovery to date. While actively hiding highly probative documents, defendant filed a motion for summary judgment which has providently been denied.

Unfortunately the case has a torturous discovery history. Numerous discovery orders have been entered against the defendant. On July 28, 1998, plaintiff submitted to the defendant a first set of documents requests. On June 14, 1999, 11 months later, the defendant was ordered by Administrative Judge Herron to provide full and complete answers within 20 days. After this court-ordered deadline had passed, Mr. Andrew Butz of the law firm of Gilberg and Kiernan, inaccurately claimed "Fireman's Fund has produced all relevant non-privileged documents and communications relating to this case, including all communications with plaintiffs and all non-privilege internal communications relating to plaintiffs' coverage of insurance from Fireman's Fund." Six months later by letter dated December 3, 1999, Mr. Butz inaccurately stated: "We can now report that we have checked the paper and electronic files kept by all persons at

---

2. Despite 18 inches of briefs and memoranda, three "appendices" and boxes of documents, defendant has presented no statement by any person with direct knowledge, explaining either Mr. West's testimony that no documents existed or Mr. Butz' behavior in sitting silently at the deposition knowing that the documents did exist.

Fireman's Fund . . . and have determined the following: Messrs. Preisman, Forsman, Pevey and Ibello have not retained any such electronic or paper documents outside the regular claims file for GRX." Counsel repeatedly made other assurances of compliance.

Months later, during the several days of argument on this motion, it became clear that the discovery previously ordered by the court and overdue by 18 months had not yet been produced. On December 23, 1999, this court entered another discovery order. Following the court's December 23, 1999 directive, hundreds of documents that should have been previously produced pursuant to Judge Herron's order entered six months earlier, were "found." Numerous additional documents were then "voluntarily" produced to plaintiff. Also following this court's order, scores of documents were added to a previously submitted "privilege log." The log of documents which defendant claims is privileged has continually expanded as new documents are "found." Pursuant to this court's order, a box of documents was produced for "in camera" review.[3] So many new documents were produced, that defendant Fireman's Fund filed a motion to appoint a special master claiming that actually reviewing the documents would place an undue burden on the court. That motion was denied. This court has reviewed the contents.

The sad history of defendant's discovery responses in this case reveals a clear pattern of delay, stonewalling, deception, obfuscation and pretense. Defendant intentionally withheld critical documents, ignored court or-

3. After having initially refused, without justification, to produce purportedly privileged documents for in camera review, defendant determined compliance was required. Nonetheless, Fireman's Fund continues a practice of "redacting" information even in documents submitted to the court for in camera review.

ders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court. The defendant, through its employees, its house counsel and its engaged litigation counsel participated in an intentional campaign to hide critical facts and documents. At every stage of discovery, reasonable and relevant requests have been met by incomplete responses, unreasonable objections, unfounded claims of privilege and intentionally incomplete "privilege" logs. Whenever plaintiff sought court intervention additional documents were "found," "voluntarily produced" and the privilege log expanded. Finally, defendant found hundreds of additional documents and submitted a box of documents entitled "J. Richard West, attorney file submitted under seal for review in camera with privilege log pursuant to court order dated December 23, 1999." It is conspicuously odd in character.[4]

Contained in the box are obviously not privileged letters to the plaintiff in this case concerning the weather forecast for San Francisco, and letters and e-mails to reschedule meetings, and teleconferences. The cover sheets of faxes are found but incomplete documents or no documents are attached. The box includes numerous letters from the plaintiff, numerous duplicate copies, and a map sent to the plaintiff. Submitted to the court as privileged are docket entries from the U.S. District Court, correspondence from the deputy clerk from the United States District Court of the Eastern District of Pennsylvania requesting $2.40 payable to the clerk of the U.S. District Court and a copy of a check in the amount of $2.40. Memos found in the box make reference to attachments

---

4. This box has been resealed for transmission to the appellate court at such time as this order may be reviewed.

without attachments. Full copies of other insurance companies insurance policies and underwriting files are enclosed as are 302 pages marked "quarterly status reports" which identify numerous e-mails that are blank except for identification from who sent, date sent and subject matter.

Amidst hundreds of such insignificant, nonsensical or unintelligible pages, are material and significant submissions that demonstrate that the defendant engaged in an intentional effort to obstruct legitimate discovery by using the claim of privilege. Defendant has attempted to hide discoverable documents, in an attorney's file, and have used an overly broad, clearly untenable, theory of "privilege" to conceal the knowledge, activity and intent which form the very basis of this bad faith lawsuit. The purportedly privileged material demonstrates a strategy antagonistic to their insured including discussion of bad faith, delaying payment, and admissions of fiduciary obligations.

An insurance company owes any insured a duty of good faith dealings. Indeed this is a fiduciary relationship. A complete picture of the defendant's dealings with its insured in this case including what is revealed in the hidden documents, reveals a carrier which used captive counsel as an integral part of its claims department, engaging in a common strategy of claims handling which kept its own financial interests paramount, to the detriment of the insured. Concerned with protecting its own funds, to the detriment of its insured, in a conscious effort to avoid this very claim of bad faith, defendant attempted to use counsel to construct a "privilege" wall against discovery of the true nature of their decision-making. This was no client-attorney relationship. Mr. West is an employee of the defendant acting not as coun-

sel but as an adjuster with a law degree. There is no privileged relationship.

Numerous important documents have been hidden in Mr. West's files. Contained among the purportedly privileged material is a highly significant memo dated March 12, 1998, from David E. Forsman, a claims representative with defendant, to Leonard Preisman another claims representative with defendant, neither of whom is an attorney. There is no colorable claim of attorney-client privilege or work product privilege applicable to this memo. The only reason the court can imagine that it has not been long ago turned over is that the contents of this internal memo from one employee of the defendant insurance company to another employee of the defendant company is that it is extremely damaging to any defense to a claim of bad faith. To create a pretense that this memo is protected, it is attached, in the copy submitted in the box for in camera review, to another memo from Richard West to Leonard Preisman. This is a blatant and transparent attempt to bury a discoverable document in an attorney's file. Other internal memoranda on which a privilege is claimed have no privilege and yet are attached to memos from Mr. West. Other documents on which a purported claim of privilege is being made are nothing other than memos of Mr. Preisman. A claim of privilege is asserted for notes made by Mr. Preisman, shared with no one. Numerous other documents identified on the privilege log have yet to be submitted to the court for in camera review.

The attorney work product privilege is grounded in Rule 4003.3 of the Rules of Civil Procedure which define the scope of discovery. This insulates from discovery "disclosure of the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes,

or summaries, legal research, or legal theories." In effect since April of 1979, the rule restricted the previously broader attorney work product privilege. The rule must be read literally and not expanded. Otherwise, discoverable documents cannot be hidden by providing them to an attorney or by maintaining them in an attorney's file. The rule immunizes only mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories of the attorney, nothing more. The defendant claims privilege for documents hidden in an attorney file, that claim is overruled and all such documents are to be provided to plaintiff.

The attorney work product privilege is inapplicable where the legal opinion of an attorney is directly relevant to a cause of action. In a case such as malicious prosecution, or abuse of process, legal malpractice, bad faith, or any other action where the opinion of counsel is in question, there is no work product protection. Where the legal opinion of a party's attorney is relevant in an action, it is discoverable. (See for example: *Nedrow v. Pennsylvania National Mutual Casualty Insurance Company,* 31 D.&C.3d 456 (1981), an action for common-law bad faith.) The Superior Court has unambiguously ruled that such documents are discoverable in a statutory bad faith action. See *The Birth Center v. St. Paul Companies Inc.,* 727 A.2d 1144 (Pa. Super. 1999), where the court said:

"Moreover, where the legal opinions, conclusions, memoranda, notes or summaries, legal research or legal theories become a relevant issue in a case, the law of Pennsylvania is that the party seeking discovery need not show substantial need and undue hardship to obtain discovery of such materials." *Id.* at 1165.

Where the actions of counsel are placed directly in question by the substantive claim there is no privilege. Where, as here, counsel is integrally involved in claims handling, the facts of the insurance company's dealing with its insured cannot be insulated from discovery. An insurance company may not ignore the advice of counsel concerning its obligations to an insured, cannot seek advice concerning bad faith and thereafter hide their knowledge and the documentation of intent behind a claim of privilege when sued for bad faith. An insurance company may not hide knowledge that a claim must be paid or strategies for delay by hiding documents in an attorney's file. As to documents that demonstrate the knowledge and pre-litigation activities of defendant there is no valid claim of privilege or work product protection and all such documents are to be provided to plaintiff.

In addition to compliance with plaintiff's proper discovery requests, plaintiff seeks sanctions for defendant's conduct. Defendant's conduct is sanctionable.

Plaintiff seeks judgment. Plaintiff rightly claims that bad faith in the conduct of discovery is itself actionable under 42 P.S. 9271. (See for example: *Rottmund v. Continental,* 813 F. Supp. 1104 (1992).) Although directly actionable, under the bad faith statute, discovery abuses are not actionable in the same case in which they occur. Judgment is the extreme sanction and may be excessive punishment for even outrageous conduct where the prejudice, however severe, is capable of being cured. The proper sanction may be the minimum sanction that accomplishes the goal of correcting the discovery abuses, restores the case to a proper discovery course, appropriately punishes recalcitrant behavior and deters future obstreperous conduct by this defendant in this case.

The court has determined that no privileged attorney-client relationship existed and accordingly there is no privilege. The court further finds that the activities and advice of Mr. West in the pre-litigation claims handling of the demand for indemnification and defense which forms the basis of this claim constitutes the essence of the issue and is thereby discoverable. The court further finds defendant's obdurate conduct, including actions demonstrating an intent to obstruct the discovery process, constitutes a waiver of any and all right to assert the attorney-client or work product privileges as it relates to Mr. West. The court further finds that numerous probative documents, on which no good faith claim of privilege can reasonably be asserted, are still hidden in Mr. West's files and are discoverable.

In accord with these findings and principles the following sanction order is entered.

## ORDER

(1) The requested sanction of judgment in favor of plaintiff and against defendant is denied.

(2) Mr. Andrew Butz and the law firm of Gilberg and Kiernan, previously admitted pro hac vice, are removed as counsel in this matter and shall not participate further in this litigation in Pennsylvania.

(3) In accordance with the affidavit of plaintiff's counsel, defendant shall pay plaintiff the sum of $126,897.81 for time and costs expended. Said payment shall be tendered within 31 days. A certification of payment shall be filed with the prothonotary.

(4) Plaintiff may conduct additional discovery for a period of 120 days including any redepositions deemed necessary.

(5) If requested by counsel for plaintiff, all redepositions shall be conducted under direct court supervision in City Hall.

(6) The claim of privilege is overruled; all previously withheld responses to written discovery are to be provided to plaintiff within 31 days.

(7) Defendant is sanctioned in the amount of $126,897.81 payable to the City of Philadelphia for unwarranted, obstreperous and deceptive conduct in discovery. Said payment shall be tendered within 31 days. A certification of payment shall be filed with the prothonotary. If not timely paid as ordered an additional sanction of $500.00 per day shall be added and accrue until payment is made.

(8) Defendant is directed to review all previously filed discovery responses for thoroughness and accuracy and shall submit all additions and corrections within 31 days. Defendant shall review all answers to interrogatories and correct any previous answers determined to be inaccurate or incomplete within 31 days. An affidavit of compliance with this paragraph shall be filed of record within 35 days.

(9) Defendant is cautioned against a continuation of its previous course of conduct in discovery.