

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2003

# Gen Refractories Co v. Firemans Fund Ins

Precedential or Non-Precedential: Precedential

Docket No. 02-2211

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Gen Refractories Co v. Firemans Fund Ins" (2003). *2003 Decisions.* Paper 318.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/318

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 24, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2211

GENERAL REFRACTORIES COMPANY;
GREFCO, INC.

v.

FIREMAN'S FUND INSURANCE COMPANY;
GILBERG & KIERNAN; ANDREW BUTZ

General Refractories Company,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-cv-05810)
District Judge: Honorable John R. Padova

Argued March 10, 2003

Before: RENDELL, AMBRO and MAGILL,*
*Circuit Judges.*

(Filed: July 24, 2003)

---

* The Honorable Frank J. Magill, Senior Circuit Judge of the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

Michael Conley, Esq. [ARGUED]
Anderson, Kill & Olick
1600 Market Street, 32nd Floor
Philadelphia, PA 19103

Barry L. Katz, Esq.
225 City Avenue, Suite 14
Bala Cynwyd, PA 19004
    *Counsel for Appellant*

Ronald P. Schiller, Esq.
Daniel J. Layden, Esq.
Piper Rudnick
18th & Arch Streets
3400 Two Logan Square
Philadelphia, PA 19103
    *Counsel for Appellee*
    *Fireman's Fund Insurance*
    *Company*

James W. Christie, Esq.
 [ARGUED]
Rex F. Brien, Esq.
Christie, Pabarue, Mortensen
 & Young
1880 John F. Kennedy Boulevard
10th Floor
Philadelphia, PA 19103
    *Counsel for Appellees*
    *Gilberg & Kiernan and*
    *Andrew Butz*

## OPINION OF THE COURT

RENDELL, *Circuit Judge.*

General Refractories Company (GRC) appeals the dismissal with prejudice of its claims of abuse of process and civil conspiracy against the law firm of Gilberg & Kiernan and one of its attorneys, Andrew Butz, Esq. We agree with the District Court that the Complaint failed to state a claim, under Pennsylvania law, for abuse of process, but conclude that it abused its discretion in denying GRC

leave to amend the Complaint as to that claim. We further disagree with the District Court that the judicial privilege necessarily would insulate the attorney appellees from liability for abuse of process. Finally, we agree with the District Court that the "intracorporate conspiracy doctrine" immunized the attorney appellees from liability for civil conspiracy. We therefore will affirm in part and reverse in part, and remand to the District Court for further proceedings.

## I. Background

GRC once manufactured heat-resistant material, used in the construction of high temperature facilities, that contained asbestos. Since that time, it has been the target of a number of asbestos-related personal injury suits. Fireman's Fund Insurance Company ("Fireman's Fund" or FFIC) is an insurance company that issued an excess insurance policy to GRC for a three-year period covering October 1971 to October 1974, with a one-month extension for November 1974.

The operative facts of this case stem from litigation initiated in April, 1998 by GRC against Fireman's Fund, in the Court of Common Pleas of Pennsylvania, Philadelphia County (hereinafter referred to as the "State Court Litigation" or, by the District Court, as the "Insurance Coverage Action"), wherein GRC alleged that Fireman's Fund refused to comply with the three-year excess blanket liability insurance policy. Fireman's Fund asserted that the policy had a total coverage limit of $5,000,000, while GRC asserted that the policy had three annual coverage limits of $5,000,000 per year. GRC claimed breach of contract, breach of fiduciary duty, and bad faith, and sought a declaratory judgment and monetary relief. Appellees — Gilberg & Kiernan and one of its lawyers, Andrew Butz (hereinafter referred to as "attorney appellees") — initially represented Fireman's Fund in the notably contentious State Court Litigation. *See generally General Refractories Co. v. Fireman's Fund Insur. Co.*, 45 Pa. D. & C. 4th 159, 164 (Pa. Com. Pl. Phila. Co. 2000), *aff'd in (pertinent) part*, 806 A.2d 469 (Pa. Super. Ct.) (table).

The case before us arises from allegedly tortious acts, committed by Fireman's Fund and the attorney appellees, that were the subject of a motion for sanctions filed by GRC against Fireman's Fund in the State Court Litigation. In the motion, GRC alleged that Fireman's Fund, Gilberg & Kiernan, and Butz committed an array of discovery and other litigation abuses. After receiving testimony and argument for four days, the court agreed with GRC that Fireman's Fund and the attorney appellees' "conduct . . . was intentional, inexcusable, and warrant[ed] severe sanctions." *General Refractories Co.*, 45 Pa. D. & C. 4th at 164. The Court's view regarding the defendant's actions is summarized in the following finding:

> The sad history of defendant's discovery responses in this case reveals a clear pattern of delay, stonewalling, deception, obfuscation and pretense. Defendant intentionally withheld critical documents, ignored court orders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court. The defendant, through its employees, its house counsel and its engaged litigation counsel participated in an intentional campaign to hide critical facts and documents. At every stage of discovery, reasonable and relevant requests have been met by incomplete responses, unreasonable objections, unfounded claims of privilege and intentionally incomplete "privilege" logs. Whenever plaintiff sought court intervention additional documents were "found," "voluntarily produced" and the privilege log expanded. . . . Amidst hundreds of such insignificant, nonsensical or unintelligible pages, are material and significant submissions that demonstrate that the defendant engaged in an intentional effort to obstruct legitimate discovery by using the claim of privilege. Defendant has attempted to hide discoverable documents, in an attorney's file, and have [sic] used an overly broad, clearly untenable, theory of "privilege" to conceal the knowledge, activity and intent which form the very basis of this bad faith lawsuit. The purportedly privileged material demonstrates a strategy antagonistic to their insured including discussion of bad faith, delaying payment, and admissions of fiduciary obligations.

*Id.* at 166-67. By order dated April 20, 2000, the Court imposed a number of sanctions, including the revocation of Gilberg & Kiernan and Butz's *pro hac vice* admission, a fine of $126,897.91 payable to the City of Philadelphia, the payment of GRC's costs and attorney's fees in bringing the motion for sanctions, a 120-day extension of discovery, a blanket waiver of Fireman Fund's right to assert privilege as to a large number of documents, and a directive that Fireman's Fund supplement and correct its prior responses to GRC's discovery requests. *Id.* at 171-72. The Court noted that it imposed only the "minimum sanction that accomplishes the goal of correcting discovery abuses, restor[ing] the case to proper discovery course, appropriately punishes recalcitrant behavior and deters future obstreperous conduct by the defendant." *Id.* at 170. On appeal, the Superior Court of Pennsylvania largely upheld all of the sanctions imposed, except for the blanket waiver of privilege. *General Refractories Co. v. Fireman's Fund Insur. Co.*, 806 A.2d 469 (Pa. Super. Ct.) (table).

While the appeal was pending, GRC brought a separate suit in the Common Pleas Court against Fireman's Fund, Gilberg & Kiernan, and Andrew Butz (together referred to as "the defendants"), complaining of the actions of Fireman's Fund and the attorney appellees during the State Court Litigation and seeking recovery of damages. The defendants removed the case to the District Court for the Eastern District of Pennsylvania.

The Complaint's allegations largely replicate the Common Pleas Court's findings in the sanctions proceeding. Nevertheless, because we are asked to analyze the sufficiency of the Complaint, we find it necessary to highlight the exact wording of many of these allegations, specifically that the defendants engaged in the following conduct: "[a] clear pattern of delay, stonewalling, deception, obfuscation and pretense;" "[i]ntentionally withholding critical documents;" "[i]gnoring court orders;" "[t]estifying falsely at depositions, with litigation counsel fully aware of the false testimony;" "[m]isrepresenting facts to the Court and opposing counsel;" "[p]articipating, through FFIC employees, its house counsel and litigation counsel, in an intentional campaign to hide critical facts and documents;"

"[p]roviding incomplete responses, unreasonable objections, unfounded claims of privilege and intentionally incomplete privilege logs in response to reasonable and relevant [requests];" "[u]sing an overly broad, clearly untenable theory of privilege to conceal the knowledge, activity and intent which formed the basis of the Insurance Coverage Action;" "[a]ctively hiding highly probative documents while moving for summary judgment on the issues to which the hidden documents related;" "[u]sing hidden documents during a deposition of a representative of GRC;" "[l]itigation counsel falsely suggesting he did not previously know of the hidden documents when their existence was finally disclosed;" "[c]ontinuing to locate hundreds of documents that should have been produced or put on privilege logs, each time claiming that they had just been 'found;'" "[e]ngaging in obdurate conduct, including actions demonstrating an attempt to obstruct the discovery process;" "[f]ailing to timely seek a stay of court orders while an appeal was pending, while at the same time refusing to comply with those orders;" "encouraging witnesses to provide false and misleading testimony;" and "encourag[ing] and convinc[ing] FFIC to change [its] position [toward the insurance policy coverage] and to breach FFIC's contractual duties to GRC." According to the Complaint, the defendants engaged in this conduct for various reasons, including "to further the interests of FFIC," "to obtain an unfair litigation advantage," "to delay FFIC having to pay any money to GRC," to "drain GRC's resources and delay the litigation," "to keep GRC from discovering their agreements and actions," and "to defeat the claims of GRC at any cost." The Complaint also alleges that Fireman's Fund, individually, "used the discovery and litigation processes for purposes of harassment and delay."

Based on these averments, GRC sought recovery under five distinct causes of action. In count I, GRC alleged that Fireman's Fund committed insurance bad faith under title 42, section 8371 of the Pennsylvania Consolidated Statutes. In count II, it alleged that Fireman's Fund breached a fiduciary duty owed to GRC. In count III, it alleged that the defendants violated the Pennsylvania common law's prohibition against abuse of process. In count IV, it alleged that the attorney appellees tortiously interfered with GRC's

contract with Fireman's Fund. In count V, it alleged that the defendants engaged in a civil conspiracy to violate the Pennsylvania bad faith statute and to abuse process. Altogether, GRC sought damages totaling $497,588 — the total attorney's fees and costs they allege they have incurred due to the discovery abuses (but not the already-reimbursed fees for costs related to bringing the motion for sanctions).

The defendants filed motions to dismiss all counts against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The District Court granted Gilberg & Kiernan and Butz's motion in whole and Fireman's Fund's motion in part. *See General Refractories Co. v. Fireman's Fund Ins. Co.*, No. 01-CV-5810, 2002 WL 376923 (E.D. Pa. Feb. 28, 2002). The Court denied Fireman's Fund's motion to dismiss count I, the bad faith claim, and also denied its motion as to count II, the breach of fiduciary duty claim, ruling that that claim would go forward as a claim for breach of the duty of good faith and fair dealing. *Id.* at *3. The Court granted each Defendant's motion to dismiss count III, the abuse of process claim, and count V, the civil conspiracy claim. *Id.* at *4, *7. The Court also granted the attorney appellees' motion to dismiss count IV, the tortious interference claim. *Id.* at *6. GRC moved for reconsideration, leave to amend the abuse of process claim, or, in the alternative, an order under Federal Rule of Civil Procedure 54(b) allowing it to bring an immediate appeal as to the attorney appellees. The Court denied reconsideration and refused to grant leave to amend, but granted the Rule 54(b) motion.

On appeal, GRC challenges the Court's decision to dismiss the abuse of process and civil conspiracy claims, as well as its denial of leave to amend, but has chosen not to appeal the dismissal of the tortious interference claim. In dismissing the abuse of process claim, the District Court held that the Complaint failed to state a cause of action for abuse of process and further found that, in any event, judicial privilege would have insulated the defendants from liability for many of their actions, *id.* at *4, and that granting leave to amend would be futile. In dismissing the civil conspiracy claim, the Court concluded that the

"intracorporate conspiracy doctrine" insulated the attorney appellees from liability. *Id.* at \*6. GRC challenges all of these rulings, while the attorney appellees not only contend that the District Court's rulings were proper, but additionally argue that the abuse of process claim could have been dismissed because it failed to contain any allegations that they used "legal process" as required to recover under the tort.[1]

We conclude that, although the District Court correctly determined that the Complaint does not contain the necessary allegations to state a cause of action for abuse of process, the District Court interpreted abuse of process in Pennsylvania too narrowly and, therefore, should have granted GRC leave to amend its Complaint. We also reject the attorney appellees' argument that GRC failed to allege properly that they used a "legal process," and we conclude that the District Court too broadly interpreted the application of the judicial privilege in Pennsylvania. Lastly, we agree with the District Court that the intracorporate

---

1. The jurisdiction of the District Court arose under 28 U.S.C. § 1332. We have jurisdiction under 18 U.S.C. § 1291. We review de novo a dismissal with prejudice under Rule 12(b)(6). *Malia v. General Elec. Co.*, 23 F.3d 828, 830 (3d Cir. 1994). We accept as true all well-pleaded facts and reasonable inferences in the complaint. *See id.* We will affirm the dismissal "only if it is certain that no relief can be granted under any set of facts which could be proved." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 919 (3d Cir. 1999) (internal quotations removed). We review the District Court's refusal to grant GRC leave to amend its complaint for abuse of discretion. *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002).

Because our jurisdiction is based on the diversity of citizenship of the parties, we must apply state law. *See Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). Pennsylvania law governs this action. We are bound by statements made by the highest state court, here, the Supreme Court of Pennsylvania, and are to predict how that court would decide the issues before us. *Id.* We are not bound by the jurisprudence of lower state courts, but often refer to them as persuasive authority. *See Hughes v. Long*, 242 F.3d 12, 128 (3d Cir. 2001). In addition, we consider the opinions of other federal courts interpreting state law, as well as opinions from other jurisdictions that have discussed similar issues. *Id.*

conspiracy doctrine insulated the attorney appellees from liability for civil conspiracy.

## II. Abuse of Process

### A.

The Supreme Court of Pennsylvania has said that "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (citing *Mayer v. Walter*, 64 Pa. 283 (1870)); *see also Morphy v. Shipley*, 41 A.2d 671, 674 (Pa. 1945) (" 'An abuse is . . . a perversion of [legal process].' " (quoting *Mayer*, 64 Pa. at 286 )). A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed." *Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.*, 154 A.2d 585, 587 (Pa. 1959). Generally speaking, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff. *See Hart v. O'Malley*, 647 A.2d 542, 551 (Pa. Super. Ct. 1994); *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).

The District Court recognized these elements of the tort, *General Refractories*, 2002 WL 376923, at *4, but also stated the following:

> The Complaint alleges that Defendants used abusive discovery tactics and improper motion practice *in order to gain a litigation advantage in the Insurance Coverage Action*. This allegation is not sufficient to support a claim for abuse of process *because the Complaint does not allege that Defendants abused process for an unlawful purpose unconnected to the purpose for which the process was designed, i.e., a successful conclusion to the Insurance Coverage Action*.

*Id.* (emphasis added). Thus, the Court found GRC's Complaint deficient because the "purpose" for any alleged use of process was to "gain a litigation advantage" in — or

was "[ ]connected to the successful conclusion of " — the State Court Litigation. As the attorney appellees put it, the District Court concluded that, in order to state a claim, the process must have been used "primarily for the purpose of coercing a collateral advantage," that is, unrelated to the underlying litigation. GRC concedes that, if we agree that the test under Pennsylvania law requires a primary purpose of achieving a "collateral advantage," the District Court properly dismissed the abuse of process claim.

We, however, do not agree. Neither the Supreme Court of Pennsylvania, nor any other Pennsylvania state court, has so narrowly construed the tort. And, we find no evidence that the Supreme Court of Pennsylvania would do so if presented with the opportunity. Instead, the Supreme Court has interpreted the tort broadly, making clear that it "will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *McGee*, 535 A.2d at 1026. *See generally* 1 Fowler Harper, Fleming James, & Oscar Gray, *The Law of Torts* § 4.9 (2d ed. 1986) (referring to this broader interpretation as the modern trend). As a result, a court must look at the legal process used and decide whether it was used primarily[2] "to benefit someone in *achieving a purpose which is not the authorized goal of the procedure* in question," *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (emphasis added), not whether it was used to achieve a purpose or advantage *unrelated or* "*collateral*" to the entire underlying litigation proceeding.

While it is true that the term "collateral" is sometimes used by Pennsylvania courts when discussing an abuse of process, *see, e.g., Hart*, 647 A.2d at 552, the attorney appellees have taken the term out of the context in which courts usually employ it, and therefore stripped it of its connotation. For instance, they rely on the following language from *In re Larson*, 616 A.2d 529 (Pa. 1992):

---

2. " 'The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or an ulterior purpose of benefit to the defendant.' " *Rosen,* 627 A.2d at 192 (quoting Restatement (Second) of Torts, § 682, cmt. b).

> Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself such as the surrender of property or the payment of money by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the assurance [sic] of the process itself, which constitutes the tort.

*Id.* at 592-93 (citing *Prosser and Keeton on Torts*, § 131 at 897 (5th ed. 1984)).[3] Accordingly, the attorney appellees insist that extortion or a similar purpose *unrelated* to the underlying litigation is *necessary* for an abuse of process claim. But, again, this results in a distortion of the concept and its meaning. The attorney appellees effectively have interpreted the modifier "usually" out of the language. A "collateral advantage" or some type of extortion outside of the underlying litigation is not the only type of abuse of process case; rather, it is the usual case — in other words, "the classic example." *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. Ct. 1994).

For the same reason, we find unpersuasive the attorney appellees' interpretation of section 682 of the Restatement (Second) of Torts and the Pennsylvania cases favorably citing to and adopting it. *See, e.g., Rosen*, 627 A.2d at 192. Section 682 defines abuse of process essentially as

---

3. We note that the excerpt is from a report filed by the Judicial Inquiry and Review Board of the Supreme Court of Pennsylvania, and accepted by the Supreme Court, with four justices recused and one justice dissenting, in a matter involving alleged improprieties of a justice of that court. Ordinarily, then, we would be inclined to view its persuasive value as minimal. But, because the language is lifted nearly verbatim from a definitive treatise, *see* W. Prosser & W. Keeton, *The Law of Torts* § 121 at 898 (5th ed. 1984), we believe that the Supreme Court of Pennsylvania would find it persuasive. In any event, we do not think the Court would interpret it the way that the attorney appellees insist we should.

Pennsylvania courts do; it states: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682; *see also Hart*, 647 A.2d at 552 (referring to "collateral purpose" as "use[ ] primarily for a purpose for which the process was not designed"). The attorney appellees have pounced on comment "b" to section 682, in arguing that an extortion-like purpose must lie behind the use of process. That provision provides that "[t]he usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." Restatement (Second) of Torts § 682 cmt. b; *see also Rosen*, 627 A.2d at 192 (quoting this section of Restatement). Again, the attorney appellees ignore "usual." The Restatement is concerned with individual legal processes primarily used for purposes for which they were not designed, *see* Restatement (Second) of Torts § 682, not whether they are used for purposes unconnected or unrelated to the underlying litigation. As the Restatement states, "The gravamen of the misconduct is the misuse of process, no matter how properly obtained, for *any purpose* other than that which it was designed to accomplish." *Id.* at 682 cmt. b (emphasis added). The Restatement does not speak in terms of the relationship of the purpose to the litigation that the attorney appellees would have us read into the tort.[4]

The potential ramifications of the District Court and attorney appellees' interpretation of the tort buttress our

---

4. Moreover, it would seem that even if extortion-like purposes were required for an abuse of process, the alleged actions of the attorney appellees might qualify. "Extortion," defined as "obtaining from by coercive means, by threats or intimidation," *Webster's II New Riverside University Dictionary* (1988), could encompass some of the purposes alluded to in the allegations made by GRC, such as forcing GRC to abandon its claim because of the attorney appellees' apparent willingness to "harass" and cause financial injury to GRC. But we do not reach this issue because there is no support for the notion that the extortion must be wholly unrelated to the underlying litigation.

conclusion. Were we to accept their view, we would render the tort largely impotent, inapplicable to those cases where a legal process is pursued in a perverted manner in order to directly harm an adversary. We would be condoning tortious tactics that harm and otherwise disadvantage an adversary simply because those tactics are related to the litigation and improve a party's chances of succeeding in the litigation. We refuse to do so and doubt that the Supreme Court of Pennsylvania would. *Accord Poduska v. Ward*, 895 F.2d 854, 856 (1st Cir. 1990) (rejecting the argument that Massachusetts limits abuse of process claims to instances where the defendant intended to coerce or extort the plaintiff); 2 Dan B. Dobbs, *The Law of Torts* § 438 (2001) ("[T]he advantage need not always be collateral in the sense that it would be outside the court's power to grant."); Harper, James, & Gray, *The Law of Torts* § 4.9 (stating that "the cause of action should be available in circumstances [other than extortion-like threats] as well, so long as intentional abuse of the legal system can be proved").

In fact, in its most recent opinion discussing abuse of process, *McGee v. Feege*, the Supreme Court of Pennsylvania, although not dealing with the issue directly, allowed an abuse of process claim based on purposes that were related to the underlying litigation to go forward. 535 A.2d 1020. In that case, McGee had successfully prosecuted a workmen's compensation claim against her employer. Her employer, however, engaged in a "blatant misuse of legal process to avoid payment of a legal obligation." *Id.* at 1022 n.5. The "misuse" involved the filling of over ten different petitions and motions related to the workmen's compensation claim, many in spite of Supreme Court of Pennsylvania's order granting McGee's petition to enforce judgment. *Id.* at 1021. While the central holding of the case was that an abuse of process did not require a seizure of property, *see id.* at 1023 n.6, 1026, the Court expressed no reservations with the other aspects of the claim and forcefully endorsed the broad viability of the tort of abuse of process, making clear, as quoted *supra*, that it "will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* at 1026. The Court's

use of "coerce" is especially important, because it was concerned with the coercion or causation of an illegitimate result, and did not limit the coercion to that causing a result collateral or unconnected to the underlying litigation or to any other context.

Having rejected the less expansive view of the tort urged by the attorney appellees and employed by the District Court that would require a purpose unconnected to the litigation, we think the test that courts should use in deciding what circumstances amount to an abuse of process has been clearly enunciated by the Supreme Court of Pennsylvania. Quite simply, a court should ask whether there has been a "perversion" of the process, or, whether a legal process has been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* at 1026.

Responding to that inquiry, we believe that using a legal process primarily to harass and cause direct injury to an adversary similar to what occurred here *could* constitute a perversion of that process. The following excerpt from the Superior Court's opinion in *Shiner v. Moriarty* is illustrative of this concept:

> The Shiners did not merely allege that the Moriartys' and the attorney defendants' intentions were impure. They alleged that the equity action, the petitions directed toward the confessed judgment, and the sundry motions to stay the execution on the leasehold during the pendency of these actions were undertaken and continued in an effort *to harass and to cause them financial and emotional injury. These objectives are illegitimate* in the context of any civil proceeding in Pennsylvania. . . . *Pursuing litigation primarily to harass* and *cause injury* to the adverse party is an objective not authorized by the equity action or the efforts to avoid the confessed judgment and constitutes a *sufficient perversion* of the process employed here to support a common law claim of abuse of process. . . . [T]he evidence presented was sufficient to permit a jury to determine that the Moriartys and the attorney defendants proceeded for a *primary purpose* of

> *harassing* the Shiners, and not to preserve the leasehold and avoid eviction.

*Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998) (citations omitted) (emphasis added); *see also Nienstadt v. Wetzel*, 651 P.2d 876, 882 (Ariz. Ct. App. 1982) (cited in *Shiner*, 706 A.2d at 1236, and *Rosen*, 627 A.2d at 192) (stating that the purpose of "expos[ing] the injured party to excessive attorney's fees and legal expenses" may support an abuse of process claim); *cf. Edwards v. Wyatt*, No. 01-1333, 2001 WL 1382503, at 13 (E.D. Pa. November 5, 2001) (finding no abuse of process where the alleged harassment stemmed from allegations in the *ad damnum* clause of a complaint). Other courts have made similar conclusions, such as that use of the legal processes "to weaken the resolve of the other party" could satisfy the perversion element. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 402 (Tenn. 2002); *id.* ("We . . . hold that abuse of process in the civil discovery context may lie when (1) the party who employs the process of a court specifically and *primarily* intends to increase the burden and expense of litigation to the other side; and (2) the use of that process cannot otherwise be said to be for the 'legitimate or reasonably justifiable purposes of advancing [the party's] interests in the ongoing litigation.' (citation omitted) (emphasis in original)); *Barquis v. Merchs. Collection Ass'n*, 496 P.2d 817, 824 (Cal. 1972) (finding a properly pled "ulterior purpose" where the complaint contained allegations of an "intent to impair individuals' rights to defend suits and, in effect, to coerce inequitable settlements and default judgments by making it inconvenient for defendants to defend suits on their merits"). These examples of what purposes "pervert" the discovery and other litigation processes seem consistent with the interpretation of the tort in Pennsylvania and we are confident that the Supreme Court of Pennsylvania would embrace them.

We pause to add a note of caution. We recognize that causing financial and emotional injury to, as well as weakening the resolve of, opposing parties in the context of ongoing litigation are somewhat nebulous concepts, and when utilizing most litigation procedures an attorney is

aware of the possibility that his actions could have one of these results. We do not, here, mean to predict that the Supreme Court of Pennsylvania would allow for liability simply because an attorney acts with these possibilities in mind. Rather, the point of liability is reached when "the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstadt*, 651 P.2d at 882. Only at that point could the legal process be considered to have been perverted.

Turning to the Complaint at issue, it appears that the *thrust* of GRC's allegations comes close to laying out a perversion of process. GRC avers that the "Fireman's Fund used the discovery and litigation process for purposes of harassment and delay," that "the abuse of process was without reasonable basis, placed FFIC, Gilberg & Kiernan's and Mr. Butz's financial interests above GRC's interests and was for the unlawful and improper purpose of avoiding and delaying GRC's right to recover under the Fireman's Fund Umbrella Policy," and that "Fireman's Fund, Gilberg & Kiernan, and Mr. Butz conspired to . . . drain GRC's resources and delay the litigation."

From these general averments, we view GRC as alleging that the defendants used "discovery and litigation process" for five different purposes: harassment, draining resources, delaying payment to GRC under the insurance policy, delaying litigation, and avoiding payment to GRC under the insurance policy. As evident from our previous discussion, the first four purposes — harassment, draining resources, delaying payment, and delaying litigation — that GRC alleges that the defendants used "discovery and litigation process" to achieve, if severe enough, could constitute perversions of the legal process.

The purpose of avoiding payment to the adverse party, on the other hand, does not suffice to state an abuse of process claim. If it did, any party who defended a lawsuit, but eventually lost, could be liable for abuse of process. Such allegations amount to exactly what the District Court interpreted them to mean: the attorney appellees used these tactics in an effort to succeed in the litigation. They

do not satisfy the requirement of pleading that a particular legal process "was used for a purpose other than for which [it] was intended." *Hart*, 647 A.2d at 552. Allowing a party to use the process in order to succeed in the litigation is an end contemplated by most legal processes, and, certainly, that goal does not pervert "discovery and litigation process." *See Poduska*, 895 F.2d at 856 ("[T]he lawsuit's objective of a money recovery cannot be the basis for abuse of process, or a defendant would have a triable counterclaim, whenever he was sued, by alleging the suit was groundless, and the plaintiff knew it."); *accord Mozzochi v. Beck*, 529 A.2d 171, 174 (Conn. 1987) (dismissing a complaint for abuse of process where the plaintiffs pled only that the defendants acted "for an unlawful ulterior purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves and their said client although they knew that their said lawsuit was without merit").

Nevertheless, the allegations are too vague as they are presented in the Complaint. The Complaint does not contain the necessary allegations that legal processes were not employed to achieve their intended purposes. The purposes for which the attorney appellees used the various legal processes are not specifically alleged as a part of the abuse of process claim against the attorney appellees, but only against Fireman's Fund. The allegations against the attorney appellees are more conclusory and general in nature. While the purposes of draining resources and delaying litigation likely would satisfy the perversion element, GRC does not incorporate such allegations into its abuse of process claim, but only makes such averments under Count V — the "civil conspiracy" claim. While a court must construe a complaint liberally, *see Bald Eagle Area School Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 327 n.7 (3d Cir. 1999), it may not rewrite a plaintiff's allegations. Therefore, the District Court did not err in dismissing the Complaint because it fell short of making the necessary allegations.

The District did err, however, in refusing to grant leave to amend. The District Court denied leave to amend on the ground that the "factual allegations which Plaintiff proposes to add to the Complaint in support of its abuse of process

claim would not be sufficient to state a claim upon which relief may be granted." However, the Court reached this conclusion while under the misimpression that the abuse must have a purpose unconnected to the litigation.

A party generally should be permitted to amend a complaint where if it did so it could state a claim. *Shane v. Fauver*, 213 F.3d 113, 115-16 (3d Cir. 2000). Federal Rule of Civil Procedure 15(a) makes clear that leave to amend "shall be freely given when justice so requires." As the District Court noted, however, where the amendment would be futile a district court does not abuse its discretion in denying leave to amend. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Other "grounds that could justify a denial of leave to amend [include] undue delay, bad faith, dilatory motive, [and] prejudice." *Shane*, 213 F.3d at 115.

In the motion for reconsideration, GRC sought leave to "specifically state that the Defendants used the discovery and motion practice to achieve a purpose that is not the anticipated goal of each of these procedures." Based on reading the opinion of the Court of Common Pleas, we conclude that GRC possibly could have cured any deficiencies in its Complaint regarding the abuse of process claim if allowed to amend. For instance, the Court of Common Pleas said the following regarding the attorney appellees' actions in the insurance litigation:

> Under the guise of negotiation and compromise those few [attorneys] who employ "slash and burn" litigation, delay legitimate discovery requests, pretend to be cooperative, dissuade recourse to discovery court, blame their client for failings and make repeated promises, all the while keeping one eye vigilantly on the clock, awaiting the moment when they can pounce upon unsuspecting prey to claim unjustified protection by the passage of a deadline. Unfortunately, in the matter before the court, Fireman's Fund Insurance Company through the action of their pro hac vice counsel has adopted this dysfunctional approach. In stark contrast to the vast number of attorneys in our court, a few lawyers have seized upon enforced

> deadlines as an opportunity to take unfair advantage of the reasonableness and civility of opposing.

*General Refractories*, 45 Pa. D. & C. 4th at 161-62. The findings of the Court of Common Pleas, as shown by this excerpt and the one reproduced *supra*, seemingly show a concerted and vicious effort orchestrated by the attorney appellees and Fireman's Fund to use various legal processes as a club against GRC in the State Court Litigation. We believe that GRC, if granted leave to amend, could properly allege that the attorney appellees used a legal process as a tactical weapon for an improper end not otherwise the legitimate object of that process.

## B.

The attorney appellees present an alternative reason as to why the District Court should have dismissed the Complaint. They contend that it did not contain allegations sufficient to satisfy the "use of a legal process" element of an abuse of process claim, and that GRC could not cure this defect. Although it is not entirely clear, the District Court appears to have determined that the Complaint sufficiently alleged a use of legal process. *See General Refractories*, 2002 WL 376923, at *4. We agree with the District Court.

In Pennsylvania, " '[t]he word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process,' " *Shiner*, 706 A.2d at 1237 (quoting *Rosen*, 627 A.2d at 192), "including discovery proceedings, the noticing of depositions and the issuing of subpoenas." *Pellegrino Food Prods. Co., Inc. v. City of Warren*, 136 F. Supp. 2d 391, 407 (W.D. Pa. 2000) (citing *Rosen*, 627 A.2d at 192); *see also McGee*, 535 A.2d 1020 (finding meritless petitions for stay, to open or strike judgment, and other motions sufficient to establish abuse of process); *Shiner*, 706 A.2d at 1237 (finding that petitions for stays in state and bankruptcy courts, reconsideration of the denial of the stay, an injunction, and to strike a confessed judgment, as well as challenges before a zoning board, constitute "use of a legal process" for purposes of an abuse of process claim).

While we agree that some of the alleged uses of legal process, such as failing to comply with court orders, failing to seek a stay, and failing to provide copies of subpoenaed documents, as well as contacting the asbestos litigation counsel, do not constitute *use* of a legal process for purposes of an abuse of process claim, we disagree that the Complaint does not contain any of the necessary allegations. In fact, most of the allegations clearly involve the use of the legal process. As the Superior Court stated in *Hart*, 647 A.2d 542: "The term 'use,' in the context of an abuse of process claim requires that a party actively seek and employ a legal process . . . ." *Id.* at 551. GRC alleges, for instance, that the attorney appellees filed various motions in an effort to obstruct discovery, knowingly made bogus claims of privilege in response to discovery requests, hid documents, and made misrepresentations to opposing counsel and the court. Construing it liberally as we must, the Complaint clearly contains allegations that the attorney appellees actively sought and employed legal processes.[5]

Accordingly, the District Court abused its discretion in denying GRC leave to amend its allegations of an abuse of process.

### III. Judicial Privilege

The attorney appellees also contend that, regardless of how we resolve the issues regarding the contours of the abuse of process claim, leave to amend would be futile given that the judicial privilege would insulate them from liability. The District Court agreed with the attorney appellees and held that their "response to discovery and court filings in the Insurance Coverage Action are absolutely privileged and, as such, cannot support a claim for abuse of process." *General Refractories*, 2002 WL 376923, at *4. The District Court, however, interpreted the judicial privilege too broadly.

---

5. Because we will remand this case to the District Court to allow GRC to amend its abuse of process claim, we find it unnecessary to parse each allegation contained in the Complaint to determine which constitutes a "legal process." Should the occasion arise, the District Court should engage in that analysis in the first instance.

The judicial privilege — often referred to, in Pennsylvania, as "judicial immunity" — extends to "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986); *see also Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971). As our court stated in a case that required us to assess "judicial privilege" in the context of a tortious interference claim:

> [T]he "privilege exists because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege." Without the protection of the privilege for communications necessary to such exploration, access to the courts would be impaired, witnesses would be intimidated and lawyers' efforts in pursuit of their clients causes would be chilled.

*Silver v. Mendel*, 894 F.2d 598, 603 (3d Cir. 1990) (quoting *Post*, 507 A.2d at 353, 355 (Pa. 1986)); *see also Binder*, 275 A.2d at 56 (stating that privilege is intended to allow "[a] judge . . . free[dom] to administer the law without fear of consequences" and is extended "to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests."). Therefore, the privilege (1) only applies to communications, and (2) does not apply to communications not either "pertinent and material to the redress or relief sought," *Post*, 507 A.2d at 353, or "essential to the exploration of legal claims in litigation." *Silver*, 894 F.2d at 603; *see, e.g., Post*, 507 A.2d at 355 (stating that there was no immunity for an attorney's statements about an adversary made in a disparaging letter to the Disciplinary Board because the statements were not made in the pleadings, during argument in the case, or during trial, but, rather, "took the form of an extrajudicial communication which was issued during the course of trial").

GRC mainly argues that the judicial privilege cannot possibly apply to these circumstances because "[i]t is illogical on the one hand to say that discovery abuses and

filing frivolous motions can support an abuse of process claim because those actions are incident to the litigation process, and on the other hand to say that those actions are absolutely privileged because they are communications issued in the litigation process." GRC's argument has a good deal of logical appeal. The mere existence of the abuse of process tort is evidence that judicial privilege applies to a much narrower range of activity than the attorney appellees urge. Where judicial process is being perverted, immunity would impede, not further, the interests protected by the judicial privilege. *See Silver*, 894 F.2d at 603-04 (finding that judicial privilege does not apply to the Pennsylvania statutory tort for wrongful use of civil proceedings — the Dragonetti Act — because "Pennsylvania would not have the Dragonetti Act if Pennsylvania's judicial privilege protected the filing of an action without probable cause and primarily for a purpose other than to secure relief").

What is more, the gist of GRC's Complaint is that the attorney appellees acted in a way that abused process. That is, GRC does not base its cause of action merely on statements, but, rather, chiefly on conduct. While some communications may be privileged — allowing, for instance, immunity from defamation actions — conduct is clearly susceptible to being punishable as abuse. *See Brown v. Del. Valley Transplant Program*, 539 A.2d 1372, 1375 (Pa. Super. Ct. 1988) (stressing that the "key" to "the absolute privilege accorded an attorney in the representation of a client in judicial proceedings . . . is whether the pertinent *communication* was undertaken in connection with representation of a client in a judicial proceeding" (emphasis added)). There are few allegations in the Complaint pertaining to the substance of any communication. Moreover, the conduct criticized by the court in the State Court Litigation would seem a dubious candidate for the privilege as it was most probably not essential to the exploration of claims.

We are therefore convinced that GRC, in its amended complaint, as in its original Complaint, could include averments that the attorney appellees abused process in a manner not protected by the judicial privilege. While the

privilege does encompass statements made in court filings and during argument and trial, *see Binder*, 275 A.2d at 56 (holding that statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court), the privilege does not extend to either conduct or to other communications neither "pertinent and material to the redress or relief sought" nor "essential to the exploration of legal claims in litigation."

We will not, however, examine the allegations of the Complaint as it stands to determine whether the judicial privilege applies, given our determination of the underlying issue. Rather, on remand, the District Court can examine the allegations in the amended complaint regarding attorney appellees' statements and determine whether those allegations involved privileged communication.[6]

## IV. Civil Conspiracy

GRC also takes issue with the District Court's dismissal of its allegations that the attorney appellees and Fireman's Fund conspired to abuse process and violate the insurance bad faith statute. In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997) (citation and internal quotations marks omitted) (cited in

---

6. In addition, on remand, the District Court should take note that an attorney is liable for abuse of process only "when the acts complained of are his own personal acts or acts of others wholly instigated and carried on by him. An attorney cannot be liable for doing nothing more than carrying out the process to its authorized conclusion." *Hart*, 647 A.2d at 553; *see also Adelman v. Rosenbaum*, 3 A.2d 15, 18 (Pa. Super. Ct. 1937) (discussing privilege and stating: "The plaintiffs' evidence, accepted by the jury, disclosed malice, and malicious action is not sheltered by any privilege. . . . An attorney is personally liable to a third party when he is guilty of . . . a malicious or tortious act. . . .).

*Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000)). The District Court held that the "intracorporate conspiracy doctrine" immunized the attorney appellees from the conspiracy. Under that theory, an entity cannot conspire with one who acts as its agent. *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (citation omitted). The District Court, relying exclusively on our opinion in *Heffernan*, concluded that the Complaint contained no allegation that the attorney appellees acted outside the scope of their representation. *General Refractories*, 2002 WL 376923, at *6. As a result, the court dismissed this claim, which GRC did not seek leave to amend. On appeal, GRC argues that the situation here is outside the intracorporate conspiracy doctrine because the attorney appellees acted for "personal reasons." We agree with the District Court that *Heffernan* forecloses GRC's argument and will affirm this aspect of the Court's ruling.

In *Heffernan*, we analyzed the application of the intracorporate conspiracy doctrine in the context of attorney-client conspiracies under 42 U.S.C. § 1985(1) & (2). 189 F.3d 405. We stated that a conspiracy between a corporation and an officer — there, also an attorney — may exist only "if the officer is acting in a personal, as opposed to official, capacity." *Id.* at 412. That is, an exception exists "when the employees have acted for their sole personal benefit." *Id.* We further noted, "[h]owever, [that] the mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." *Id.* at 413 (citation omitted). Ultimately, we concluded that, "because defendants acted within the attorney-client relationship, they cannot be considered conspirators." *Id.* at 407. In reaching this conclusion, we emphasized that the policy reasons for applying the intracorporate conspiracy ban are "even more compelling" in the attorney-client context than in the "corporate field," given that "[c]ounsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." *Id.* at 413; *see also Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840-41 (6th Cir. 1994) (holding that the hospital did not conspire with its employees in violation of 42 U.S.C. § 1985 where

those employees acted within the scope of their employment).

GRC fails to point to any part of its Complaint containing allegations that the attorney appellees acted outside of their scope of representation, or allegations from which this even could be inferred. Instead of pointing to where it argued that the attorney appellees acted for personal reasons, GRC argues that either the mere nature of the conduct of the attorney appellees — which it refers to as "outrageous" — or the attorney appellees' illegitimate purpose, took their conduct beyond the scope of the attorney-client relationship. In *Heffernan*, however, we rejected a similar argument, stating that "[t]he challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge . . . ." 189 F.3d at 413. Moreover, the fact that the attorney appellees may have acted in bad faith or with the illegitimate purpose of abusing process in mind, does not, in itself, bring their actions outside the scope of the attorney-client relationship. Such a proposition is clearly not supportable. If we agreed with GRC that an illegitimate purpose takes an agent's or an attorney's actions outside the scope of the agency or representation, we would be forced to exempt all illicit intracorporate agreements from immunity; this exception, although perhaps an appealing concept so as to deprive such illicit agreements of protection, has no basis in the law. Accordingly, the District Court properly dismissed this claim.

## V. Conclusion

For the reasons stated above, we will affirm in part and reverse in part, and remand to the District Court so that it may grant GRC leave to amend its Complaint as to the abuse of process claim.

A True Copy:
  Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*