NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2056
_____

MARCY NAPIER,

Appellant

v.

CITY OF NEW CASTLE; ANTHONY LAGNESE;
CHRISTOPHER BOUYE; JOHN DOE 1-10
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-01368)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
October 22, 2010

Before: HARDIMAN, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Filed: October 28, 2010)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Marcy Napier appeals an order of the District Court entering judgment against her.

She contends that the District Court erred twice: first, by granting a motion to dismiss her

§ 1983 and state law claims for abuse of process; and second, by granting a motion for summary judgment on her § 1983 and state law claims for malicious prosecution. Largely for the reasons stated by the District Court, we will affirm.

## I.

Because we write for the parties, we recount only the facts and procedural history necessary to our decision.[1]

On June 17, 2004, Anthony Lagnese and Christopher Bouye, officers in the narcotics unit of the City of New Castle Police Department, met with a confidential informant (CI), who had previously provided reliable information. The CI informed them that he could buy drugs from a "Marie Napier" or "Marcy Napier"[2] and a "Michael Buxton," so they set out to stage the drug buys. Lagnese positioned himself to see the transaction, while Bouye was positioned to see Lagnese, but not the sellers. Lagnese then observed the CI purchase $60.00 worth of crack cocaine from two women.

Lagnese later examined the Pennsylvania driver's license identification

---

[1] Although Napier appeals from both a motion to dismiss and a motion for summary judgment, the differences between the facts considered at the motion to dismiss stage (drawn from Napier's complaint and undisputed documents) and those considered at the summary judgment stage (drawn from the complete record viewed in the light most favorable to Napier) were not germane to the District Court's decisions at each stage.

[2] The police report indicates the name "Marie Napier," Bouye testified that the CI gave the name "Marcy Napier," and Lagnese testified that the CI gave both names. This initial confusion about the names, however, did not substantially impact the subsequent identification and probable cause issues underlying Napier's claims.

photographs of Marcy Napier and determined that they resembled one of the women he had seen selling drugs to the CI, a woman whom the CI had identified as Marie or Marcy Napier. Therefore, Bouye and Lagnese filed criminal charges against Napier. On October 1, 2004, three and one-half months after the buy, Napier was arrested at her home. Lagnese observed the arrest and noticed that Napier looked different from his memory of the woman he had observed selling drugs. Specifically, he believed that her hair style and weight were different. He told Bouye about his observations, and they discussed the possibility that such changes in appearance could occur in three and one-half months. Following her arrest, Napier was taken to the Lawrence County Jail, strip searched, photographed, and held for three days.

Napier's preliminary hearing was originally scheduled for October 7, 2004, but it was continued by the district attorney. The hearing was subsequently continued three more times, while Napier's defense counsel and the district attorney discussed the possibility of Napier submitting to a polygraph test. Napier finally took and passed the polygraph test on March 15, 2005.

Napier alleges that after the polygraph test, she had a meeting with Bouye and Lagnese. Lagnese confirms that they spoke; Bouye denies that the meeting ever took place. Both officers disagree with Napier as to the substance of the discussion. According to Napier, Bouye apologized and told her that Lagnese knew, at the time of the arrest, that she was not the person he had observed selling drugs. Napier testified:

3

He said -- Lagnese was sitting there; Bouye is standing up, pacing. He says: Marcy sit down. Can I please have a moment of your time? I said: Sure. He says: Marcy, I don't know what happened. He said: This has never happened to me before. I have to tell you what happened.

He says: The day of your arrest -- he said: Marcy, Lagnese was out there in front of your house while they brought you out in handcuffs. He looked at your face and realized you weren't the girl that he ID'd . . . two months before. Those were his exact words.

I said: Why didn't he speak up and say something? He could have kept me from going to jail. My neighbors are out there screaming. I'm crying, telling them that they have the wrong person. Half of the other cops, they were boggled too, because they knew me. They're like: Marcy, what's going on?

So he said that Lagnese stood there: realized I wasn't the girl. I said: Why did he do that? He said: Well, he didn't know. I thought maybe he just didn't want to look embarrassed in front of his peers by admitting he had the wrong person.

App. 205-06. The district attorney subsequently withdrew the charges against Napier.

On October 12, 2006, Napier filed a complaint in federal district court against the Appellees, alleging nine state and federal causes of action. After Appellees moved for dismissal or summary judgment on all the claims, the Magistrate Judge filed a Report and Recommendation, recommending that: (1) the claims for false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress, and invasion of privacy be dismissed on statute of limitations grounds; (2) the state law claims for negligence and malicious prosecution, against the City, be dismissed pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8241, *et seq.*; and (3) the claim for abuse of process be dismissed for failure to state a claim. Nevertheless, the Magistrate Judge recommended that the § 1983 malicious prosecution claim against all Appellees

4

and the state law malicious prosecution claim against the officers not be dismissed. The

District Court adopted the Report and Recommendation as the Opinion of the Court.

*Napier v. City of New Castle, et al.*, C.A. No. 06-1368, 2007 WL 1965296 (W.D. Pa. July

3, 2007). After discovery, Appellees filed a motion for summary judgment on the

remaining malicious prosecution claims, which was granted in a second Report and

Recommendation, which also was adopted by the District Court. *Napier v. City of New*

*Castle, et al.*, C.A. No. 06-1368, 2009 WL 742688 (W.D. Pa. Mar. 20, 2009).

## II.

## A.

Napier appeals the dismissal of her abuse of process claims. We review *de novo* a

District Court's judgment granting a motion to dismiss pursuant to Rule 12(b)(6).

*Ballentine v. United States,* 486 F.3d 806, 808 (3d Cir. 2007).[3]

An abuse of process occurs when a party employs legal process against another

primarily to accomplish a purpose for which it was not designed. *Gen. Refractories Co.*

*v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307 (3d Cir. 2003). "In contrast to a section

1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process

lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other

---

[3] Napier argues that the abuse of process claims should not have been dismissed on statute of limitations grounds, but the District Court opinion actually dismissed them for failure to state a claim under Rule 12(b)(6). *Napier*, 2007 WL 1965296, at *5-6 (W.D. Pa. July 3, 2007).

than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). Pennsylvania recognizes a cause of action for abuse of process where "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). "'[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977)).

As the District Court correctly determined, Napier's abuse of process claim alleged that the officers filed criminal charges and arrested her to avoid embarrassment and to conceal the fact that they were unsure they had identified the right person. All of Napier's complained-of injuries occurred in connection with the initial charge and arrest. But the initial filing of criminal charges and her arrest, if improper, would constitute malicious prosecution, not abuse of process. *See Rose*, 871 F.2d at 350 n.17. Unlike her original complaint, Napier now argues that "it is the subsequent acts after the filing and not the institution of a criminal proceeding which gives rise to the tort of abuse of process" and that "throughout each stage of the proceedings, the Appellees continued the prosecution against Appellant Napier even though they knew they had arrested the wrong

6

person." Appellant's Br. 19, 21.[4] As the District Court recognized, however, "'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Napier*, 2007 WL 1965296 *6 (W.D. Pa. July 3, 2007) (quoting *Evans v. Durham Life Insurance Co.*, 2001 WL 770803 *2 (E.D. Pa. 2001)).

Accordingly, the District Court did not err when it dismissed Napier's claims for abuse of process.

### B.

Napier also appeals the District Court's summary judgment on her malicious prosecution claims. We review a summary judgment *de novo. Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005). We "apply the same test required of the district court" and view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

A claim of malicious prosecution under § 1983 requires, *inter alia*, that the proceeding was initiated without probable cause. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Similarly, in Pennsylvania, "[i]n order to sustain a cause of action for malicious prosecution relating to a criminal prosecution, the plaintiff must

---

[4] Not only was this claim not a part of Napier's original complaint, there is no record evidence of which party sought or obtained the multiple continuances.

7

prove that the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003) (citing *Turano v. Hunt*, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993)).

As the District Court recognized, in this case both causes of action turn on whether probable cause existed to initiate proceedings against Napier. Probable cause for purposes of malicious prosecution actions has been defined as: "reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973). An arrest was made with probable cause if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The inquiry is an objective one, and "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Napier tries to minimize the importance of probable cause for her arrest, stating that "[i]n this case, the issue of probable cause for the arrest of Appellant is not of concern," Appellant's Br. at 23, presumably because the record evidence shows that

probable cause existed. Because the lack of probable cause is an element of a malicious

prosecution claim, the existence of probable cause for the arrest invalidates that claim.

*Estate of Smith,* 318 F.3d at 522; *Strickland v. University of Scranton*, 700 A.2d 979, 984

(Pa. Super. Ct. 1997). At the time of the arrest, Lagnese knew that Napier had been

identified by the CI, that he had witnessed a woman selling drugs who looked like

Napier's driver's license photograph, that Napier resembled the woman he had seen

selling drugs—albeit with a different hairstyle and weight—and that it had been three and

one-half months since he observed the woman selling drugs. Regardless of whether

Lagnese subjectively suspected that Napier was not the woman he had observed selling

drugs, these circumstances are sufficient for a reasonable officer to believe that Napier

was guilty of the offense, and therefore establish probable cause for the arrest.[5]

Napier responds that even though there was probable cause for the arrest, the

officers can be found liable for malicious prosecution if they "'knowingly or with

reckless disregard for the truth concealed exculpatory evidence from or provided false or

misleading reports to the prosecutor or otherwise interfered with the prosecutor's ability

to exercise independent judgment.'" Appellant's Br. 23 (quoting *Vassallo v. Timoney*,

---

[5] Other record evidence—including Napier's testimony that her driver's license photograph resembled a known local drug dealer, and Napier's sister's testimony that the photograph resembled a different known local drug dealer—was not known to Lagnese at the time, and therefore does not contribute to or detract from the reasonableness of his belief. But it does potentially explain any error of identification on his part.

2001 WL 1243517, at *7 n.8 (E.D. Pa. Oct 15, 2001). Napier's reliance on *Vassallo* is misplaced. Like *Vassallo*, where the court found no malicious prosecution because there was no evidence that the defendant police officers had withheld exculpatory evidence from the prosecutor, there is no record evidence showing that Appellees withheld exculpatory evidence from or provided false or misleading reports to the district attorney. Napier argues that Lagnese and Bouye should have informed the district attorney of the differences in appearance noted by Lagnese at the time of her arrest. Napier characterizes this information as Lagnese's knowledge "on the day of the arrest that Appellant Napier was not the same person who participated in the drug buy." Appellant's Br. 24. But the record simply indicates that Lagnese noted differences in appearance, which is, in the words of the District Court, "not the equivalent of knowing that Napier was not the woman who engaged in the drug buy." *Napier*, 2009 WL 742688, at *5.[6] Not informing the district attorney of a momentary doubt, which had been subsequently dispelled and which did not eliminate the probable cause for the arrest, cannot constitute knowingly or with reckless disregard for the truth concealing exculpatory evidence from the prosecutor

---

[6] The only record evidence even suggesting that Lagnese "knew" that Napier was the wrong person is Napier's own, ambiguous deposition testimony that Bouye told her that Lagnese had told him that "[h]e looked at your face and realized you weren't the girl that he ID'd." App. 206. The District Court rightly notes that this self-serving testimony as to information of which Napier had no direct knowledge cannot create a material issue of fact that allows this case to survive summary judgment. *Napier*, 2009 WL 742688, at *6 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *Quiroga v. Hasbro, Inc.*,

10

or otherwise interfering with the prosecutor's ability to exercise independent judgment. In sum, because Napier cannot establish that the proceedings lacked probable cause when initiated, she cannot maintain a claim for wrongful prosecution.

## III.

Finally, Napier argues that the City of New Castle should be held liable because the officers were acting pursuant to a city custom or policy. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). However, because the District Court correctly found that there was no constitutional violation for which the officers were liable under § 1983, the City cannot be held vicariously liable. *See, e.g.*, *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989).

## IV.

For the foregoing reasons, we find that the District Court did not err in dismissing Napier's claims for abuse of process or in granting summary judgment as to her claims of malicious prosecution. Accordingly, we will affirm the judgment of the District Court.

---

934 F.2d 497, 500 (3d Cir. 1991); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)).