**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4455
_____

FREDERICK LIVINGSTON, an individual,

Appellant

v.

THE BOROUGH OF EDGEWOOD, a municipal corporation; DENNIS
HOCKENBERRY; TIMOTHY QUINN; MICHAEL CROW; KURT FERGUSON;
PAUL WOOD, individuals; EDGEWOOD BOROUGH POLICE OFFICERS
ASSOCIATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 2:08-00812)
Magistrate Judge:  Hon. Lisa P. Lenihan[*]

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2011

Before:  SMITH, CHAGARES, and VANASKIE, Circuit Judges.

(Filed June 2, 2011)

_____

OPINION
_____

---

[*]  Both parties consented to the exercise of jurisdiction by Magistrate Judge Lenihan
pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

CHAGARES, Circuit Judge.

Plaintiff Frederick Livingston appeals the Magistrate Judge's grant of summary judgment in favor of defendants Borough of Edgewood and several of its current and former employees.[1]  For the reasons that follow, we will affirm.

I.

We write for the parties' benefit and recite only the facts essential to our disposition.[2]  Livingston, who is African American, has been employed as a police officer in the Borough of Edgewood since February 1996.  In August 2005, Livingston was arrested for rape, statutory sexual assault, sexual assault, incest, endangering the welfare of children, aggravated indecent assault, indecent assault, and corruption of minors, based upon allegations that he had sexually abused one of his daughters.  The Borough of Edgewood police department subsequently suspended Livingston, with pay, on August

---

[1]  Dennis Hockenberry, Timothy Quinn, and Michael Crow are current or former Borough of Edgewood police officers.  Kurt Ferguson is the former Edgewood Borough Manager.  Paul Wood is the former Edgewood chief of police.

[2]  Furthermore, we only cite to facts that are supported by evidence in the record.  On appeal, as before the Magistrate Judge, Livingston relies on unsupported factual assertions.  As the Magistrate Judge noted, Livingston "may not, at this stage of the proceedings, continue to maintain claims on unsupported/conclusory allegations" or rely on "hearsay or speculative assertions made without foundation."  Appendix 5 n.3.

16, 2005. In February 2006, following a <u>Loudermill</u> hearing,[3] the Borough changed the terms of Livingston's suspension to one without pay.

Livingston's criminal trial took place in September 2006. At that trial, several of the individual defendants testified against Livingston regarding his reputation for truthfulness. On September 19, 2006, the jury returned a verdict of acquittal. Livingston's pay was reinstated the following day and he returned to active duty as a police officer on November 11, 2006.[4]

Livingston compares his pre-suspension and post-suspension experience as an Edgewood police officer as being in "separate continents." Appendix ("App.") 720. For example, after returning from suspension, many of Livingston's extra responsibilities had been reassigned, including his former position of "crime prevention officer" and his duty of acting as the liaison for the library's annual Halloween party. Several of Livingston's other pre-suspension responsibilities had simply been discontinued. He had formerly acted as a Drug Abuse Resistance Education (DARE) officer, and had also been involved in a bike rodeo program and the citizen's police academy program. All three of these programs were terminated during Livingston's suspension.

---

[3] This is the name given to a hearing for a public employee conducted pursuant to the Supreme Court's decision in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985).

[4] Before Livingston returned to work, the Edgewood police department completed an investigation regarding whether Livingston had violated any departmental rules or regulations stemming from his criminal prosecution. The investigation concluded that no violations had occurred.

In addition, Livingston complained of general mistreatment after his return, including that: (1) fellow police officer (and defendant) Hockenberry did not assist him when he was evacuating children during a potential fire emergency; (2) he was not allowed to take a third week of vacation for his wedding; (3) unlike other officers, he was not provided a new individually-fitted bullet-proof vest for more than two years following his return; (4) he did not receive appropriate computer training; and (5) he was unfairly reprimanded for minor infractions such as failing to turn in daily log sheets. Livingston was also assigned to handle DUI case preparations and abandoned vehicles, tasks that he deemed to be less desirable than his previous pre-suspension responsibilities.

In January and March/April of 2007, Livingston complained to the chief of the police department about a "hostile work environment."[5] On August 13, 2007, Livingston filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"), alleging race discrimination and retaliation. See App. 943-50.[6] In September 2007, Livingston verbally complained to the chief of the police department, and contended that

---

[5] The January 2007 complaint provided no specifics regarding this hostile work environment. The March/April 2007 complaint pertained to fellow officer Hockenberry, and mentioned, among other things, Hockenberry's failure to assist Livingston during the potential fire emergency.

[6] This August 2007 EEOC complaint is the first time that Livingston alleged racial discrimination.

4

two additional African American employees had been discriminated against.[7]  In September 2009, Livingston again complained to the chief of the police department, this time regarding a dispute with defendant Timothy Quinn, a fellow police officer with less seniority than Livingston.  There is evidence in the record to suggest that Livingston and Quinn had verbally threatened one another, and that during Livingston's suspension, Quinn had created a computer image of Livingston behind bars and had used insensitive racial language.  After holding Loudermill hearings, the Borough suspended Quinn for ten days and ordered both Livingston and Quinn to attend anger management classes.

Livingston initiated this case by filing a complaint on June 12, 2008.[8]  After the completion of discovery, defendants moved for summary judgment.  On November 1, 2010, the Magistrate Judge granted defendants' motion and entered summary judgment in favor of defendants as to Livingston's claims for racial discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Livingston's equal protection claim asserted pursuant to 42 U.S.C § 1983, Livingston's federal conspiracy claim asserted pursuant to

---

[7]  The September 2007 complaint, like the March/April 2007 complaint, pertained to the behavior of officer Hockenberry.

[8]  Livingston later filed a second civil action in Pennsylvania state court.  That action was removed to federal court and consolidated with the first action then proceeding before the Magistrate Judge.

5

42 U.S.C § 1985(3), and Livingston's state-law claims for civil conspiracy and defamation.[9] This timely appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of the Magistrate Judge's grant of summary judgment is plenary, and we apply the same legal standard as the Magistrate Judge. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Livingston, and must draw all reasonable inferences in his favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, Livingston must "produce admissible evidence containing 'specific facts showing that there is a genuine issue for trial.'" Id. at 542 (quoting Fed. R. Civ. P. 56(e)).

## III.

---

[9] Defendants previously filed a motion to dismiss certain claims asserted by Livingston in his original complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Magistrate Judge granted that motion and dismissed Livingston's claims alleging violations of his First, Fifth, Sixth, and Fourteenth Amendment due process rights, all asserted pursuant to 42 U.S.C § 1983, as well as his state-law claim for intentional infliction of emotional distress. Livingston does not challenge these earlier dismissals on appeal.

Livingston appeals the entry of summary judgment dismissing all of his claims. We will assess each of Livingston's claims in turn, and will affirm for essentially the same reasons articulated by the Magistrate Judge in her thorough and well-reasoned opinion.

A.

We will first discuss Livingston's claims for racial discrimination, hostile work environment, and retaliation brought pursuant to Title VII. In sum, we conclude that while the evidence establishes that tensions arose between Livingston and certain of his colleagues following Livingston's arrest based upon allegations that Livingston had sexually abused one of his daughters, and that perhaps as a result, Livingston may have been treated differently after returning to work following his arrest-related suspension, there is insufficient evidence in the record to support a finding that Livingston suffered intentional discrimination, a hostile work environment, or retaliation on account of his race. We will therefore affirm the dismissal of Livingston's claims brought under Title VII.

1.

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

7

Livingston first claims that defendants discriminated against him on the basis of his race. To maintain a prima facie case for racial discrimination, Livingston must show that: (1) he is African American; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that similarly situated persons who are not African American were treated more favorably or that the circumstances of the adverse employment action give rise to an inference of discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Jones v. Sch. Dist. Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). In the absence of direct evidence of discrimination,[10] Livingston may satisfy this initial burden pursuant to the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Livingston bears the initial burden of establishing a prima facie case of unlawful discrimination by a "preponderance of the evidence." Sarullo, 352 F.3d at 797. If Livingston succeeds, the burden of production shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If defendants meet this "relatively light burden," the burden of production returns to Livingston, who must show by a preponderance of the evidence that defendants' proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

In this case, Livingston has failed to meet his initial burden to establish a prima facie case of unlawful discrimination by a preponderance of the evidence in regard to the

---

[10] Since Livingston offers no direct evidence, we will assess his claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

fourth element of his racial discrimination claim. As the Magistrate Judge held, "[p]laintiff has proffered nothing more than his own speculation that his post-arrest and post-reinstatement treatment would have been different were he not African American" and there is "no evidence of reasonably similarly situated individuals (e.g., in circumstances of comparable seriousness) treated differently." App. 20. Accordingly, we affirm the dismissal of Livingston's racial discrimination claim.

2.

For similar reasons, Livingston's hostile work environment claim also fails. To establish a Title VII hostile work environment claim, Livingston must prove that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). For the reasons just stated, there is insufficient evidence in the record from which a reasonable juror could conclude that Livingston suffered intentional discrimination due to his race. Moreover, there is also insufficient evidence to support a reasonable finding that any discrimination was pervasive and regular. We therefore affirm the dismissal of Livingston's hostile work environment claim.

3.

In order to prevail on a retaliation claim under Title VII, Livingston must show that: (1) he engaged in activity protected by Title VII; (2) defendants took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. See Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). Livingston's retaliation claim is limited to events occurring on or after October 14, 2006, three-hundred days prior to the filing of his August 13, 2007 EEOC complaint. Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002). During that relevant time period, the only protected acts in which Livingston engaged were his complaints to the chief of the police department in 2007, his August 2007 EEOC complaint, and his subsequent complaints regarding racial discrimination. We agree with the Magistrate Judge that "there is simply insufficient evidence from which the fact finder could reasonably infer a causal connection between any material adverse action and retaliation for conduct protected under Title VII." App. 27; see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007). Accordingly, we affirm the dismissal of Livingston's retaliation claim, and by so doing, we affirm the dismissal of all of Livingston's claims brought pursuant to Title VII.

B.

Livingston also appeals the dismissal of his equal protection claim, asserted pursuant to 42 U.S.C. § 1983. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)

10

(emphasis added). A claim brought pursuant to 42 U.S.C. § 1983 also requires that defendants "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Bonenberger v. Plymouth Twp., 132 F.3d 20, 23 (3d Cir. 1997) (internal quotations omitted). Here, Livingston has failed to adduce sufficient evidence that any of the defendants acted under the authority of state law to discriminate purposefully against him on the basis of his race. Furthermore, in order to maintain a § 1983 claim against the Borough of Edgewood, a municipality, Livingston must prove that an official policy or custom caused him to be denied a constitutional right pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). There is no evidence in the record to suggest that any such policy or custom existed. We thus affirm the dismissal of Livingston's equal protection claims.

C.

Livingston's federal conspiracy claim, asserted pursuant to 42 U.S.C. § 1985(3), requires that he establish: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Similarly, Livingston's Pennsylvania state-law claim for civil conspiracy requires: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done

11

in pursuance of the common purpose; and (3) actual legal damage." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quotation marks omitted). For purposes relevant to both of these claims, in order "[t]o constitute a conspiracy, there must be a meeting of the minds." Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (quotation marks omitted).

The Magistrate Judge correctly concluded that there is insufficient evidence in the record to establish the requisite "meeting of the minds," and therefore, the existence of a conspiracy, since Livingston has "proffered neither direct nor circumstantial evidence sufficient to a reasonable finding of conspiratorial agreement or concerted efforts among the [d]efendants." App. 32; cf. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010) ("To survive a motion for summary judgment on [plaintiff's] section 1985(3) claim, [the plaintiff] first was required to put forward facts that would allow a reasonable factfinder to conclude that [the defendants] formed a conspiracy to deprive him of his rights."). We therefore affirm the dismissal of Livingston's federal and state-law conspiracy claims.

D.

Finally, we affirm the dismissal of Livingston's state-law defamation claim. A one-year statute of limitations applies to this claim, see 42 Pa. Cons. Stat. § 5523, and Livingston has failed to adduce evidence of a single defamatory statement by any of the

12

defendants within one year of the filing of his first complaint on June 12, 2008. Accordingly, Livingston's state law defamation claim is time-barred.[11]

IV.

For the reasons stated above, we will affirm.

---

[11] Livingston also appeals the denial of his claim for punitive damages. <u>See</u> Livingston Br. at 43-45. The Magistrate Judge did not address this issue in her opinion. In light of our disposition affirming the Magistrate Judge's dismissal of all of Livingston's substantive claims, we also hold that there is no need to determine whether punitive damages would be appropriate in this case.